IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF GEORGIA
ATLANTA DIVISION

|  |  |
|---|---|
| AIR WEST EAST COMMUNICATIONS, LLC, et al.,<br><br>             Plaintiffs,<br><br>v.<br><br>STATE FARM FIRE AND CASUALTY CO.,<br><br>             Defendant. | CIVIL ACTION NO.<br><br>1:10-cv-2767-JEC |

**ORDER AND OPINION**

This case is before the Court on the defendant's Motion to Enforce Settlement [98]. The Court has reviewed the record and the arguments of the parties and, for the reasons set out below, concludes that the defendant's Motion to Enforce Settlement [98] should be **DENIED WITHOUT PREJUDICE**.

**BACKGROUND**

On July 28, 2010, Air West East Communications, LLC and Kevin E. Dixon, Sr. (hereafter "plaintiff")[1] filed a complaint for damages against State Farm Fire and Casualty Co. (hereafter "defendant") in Cobb County State Court. (*See* Compl. attached to Def.'s Mot. to

---

[1] As Air West East is, effectively, the alter ego of Kevin Dixon and as it is Dixon who figures in the present dispute, the Court refers to plaintiffs in the singular form.

AO 72A
(Rev.8/82)

Remove [1-1].)  Defendant removed the suit to the United States District Court for the Northern District of Georgia. (Def.'s Mot. to Remove [1].)[2]  After multiple changes in his representation, plaintiff was represented at the time of the purported settlement by David A. Sapp and Daniel J. Moriarty of Green & Sapp, LLP.  (Notice of Appearance [83] & [93].)  Defendant was and is represented by Thomas Ward and Mark Dietrichs of Swift, Currie, McGhee, & Hiers, LLP. (Def.'s Mot. to Remove [1].)

On November 13, 2012, plaintiff's counsel Moriarty sent plaintiff Dixon an e-mail with a written update of the case, stating that plaintiff should attempt to settle the suit quickly.[3]  (*See* Ex. E attached to Pl.'s Obj. to Def.'s Mot. to Enforce Settlement ("Pl.'s Obj.") [104].)  Plaintiff responded on November 16, 2012, informing his attorney that plaintiff was "willing to settle for the amount of $587,000.00."  (*Id.*)

---

[2] Plaintiff Air West East Communications, LLC is incorporated in the State of Georgia and has its principle place of business in Georgia. (Def.'s Mot. to Remove [1] at ¶ 2.) Plaintiff Kevin Dixon is a citizen of and domiciled in Georgia. (*Id.* at ¶ 3.) Defendant is incorporated in the State of Illinois and has its principle place of business in Illinois. (*Id.* at ¶ 4.)

[3] Neither plaintiff nor defendant have submitted affidavits setting out the course of events. Instead, each party has merely attached e-mails as exhibits to their pleadings. The absence of a full narrative of the interactions between the pertinent individuals has led to an incomplete understanding of what exactly happened here. Accordingly, the Court's recitation of the facts is necessarily taken from the attached e-mails.

On November 26, 2012, defense counsel Dietrichs sent plaintiff's counsel Sapp an e-mail containing an offer from defendant to settle the suit. (Def.'s Mot. to Enforce Settlement [98].) Defendant's offer stated that defendant was "prepared to pay the Plaintiffs $9,978 in return for a full release and dismissal with prejudice of the lawsuit." (*Id.* at 2.) Plaintiff's counsel Moriarty relayed this message to plaintiff on November 28, 2012, informing plaintiff that his law firm would waive all remaining attorney fees owed by plaintiff in return for $4,978 of the settlement fund. Counsel recommended that plaintiff accept defendant's offer. (*See* Ex. E attached to Pl.'s Obj. [104].) The e-mail from Moriarty included the warning: "State Farm indicates that if we counter-offer, that they will treat that counter-offer as a rejection of the $9,978, and . . . file a motion for summary judgment thereafter." (*Id.*)

Plaintiff Dixon responded the next day to his attorney and implicitly declined the offer. (*Id.*) The e-mail read "[d]ear Sirs, regarding your recommendation to move forward with settlement negotiation with State Farm. We are willing to settle for the amount of $587,000.00 . . . ." (*Id.*)

Next, on December 5, 2012, plaintiff's counsel Moriarty sent an e-mail to plaintiff confirming a recent phone conversation between plaintiff and Moriarty. (*Id.*) The e-mail noted that plaintiff had agreed that his attorney would make a counter-offer for $15,000 and

3

that counsel would be "authorized to accept anything higher than $14,000." (*Id.*) Subsequently, on December 10, at 3:29 p.m., plaintiff emailed his attorney, stating, "the counter offer should consist of **personal property** and **property damages** that we incurred **attorney fees** and **bad faith** . . . there (sic) letter dated on Nov.26.2012 take it or leave it I strongly feel we can make more realistic than $9,978.00." (Pl.'s Resp. in Opp'n to Def.'s Mot. to Enforce Settlement ("Pl.'s Resp.") [105])(emphasis in original).

Notwithstanding that directive by his client, two hours later, plaintiff's counsel sent a confirmation e-mail to defense counsel Ward, stating: "AirWest and Kevin Dixon have agreed to accept State Farm's settlement offer of $9978.00, and all of the other terms that accompanied this offer . . . ." (*See* Def.'s Mot. to Enforce Settlement at Ex. D [98-4].) Defense counsel Ward acknowledged plaintiff's acceptance of the offer the next day, on December 11. (*Id.*)

Later that same day, defense counsel Ward again e-mailed plaintiff's counsel, stating that he had since "reviewed the file for possible attorney liens" and had found "Tom Bound filed a lien for $6210.83." (*Id.* at Ex. C [98-3].) The record contains no response from plaintiff's counsel regarding Bound's lien. Further, the drafted Release of plaintiff's claim makes no reference to Bound's lien, but instead refers only to a lien by a Theodore Salter &

4

Associates.[4]  (*Id.* at Ex. E [98-5].)  The proposed settlement check lists "Green & Sapp LLP & Theodore Salter Jr. & Associates & Air West East Communications, LLC and Kevin E Dixon, Sr.," but does not include Bound.  (Def.'s Reply Br. [103-1].)

On December 13, an e-mail from defense counsel Ward to plaintiff's counsel confirmed a conversation between the two to the effect that plaintiff was "now not willing to honor the settlement agreement." (*See* Def.'s Mot. to Enforce Settlement at Ex. D [98-4].) Defense counsel warned that defendant would file a motion to enforce settlement if plaintiff did not honor the settlement. (*Id.*)

Defendant filed its Motion to Enforce Settlement on December 14, 2012. ([98].)  Plaintiff's counsel Sapp filed a response to this motion, but made no argument in opposition to defendant's motion, instead admitting "[t]he Plaintiffs do not have any factual or legal grounds to oppose State Farm's motion." (Pl.'s Reply to Def.'s Mot. to Enforce Settlement ("Pl.'s Reply") [99].)  Plaintiff Dixon independently filed his own response to defendant's motion, on December 31, stating that plaintiff had "not agreed to this settlement offer with State Farm or our attorneys Green & Sapp,LLP

---

[4] While other evidence in the record reveals Tom Bound works for Theodore Salter & Associates, defense counsel has not filed sufficient documentation to permit the Court to know whether this lien is based on Bound's work.  Instead, defendant has provided only vague references to its existence.

5

(sic) . . . ."  (Pl. Dixon's Reply [102].)

## **DISCUSSION**

Defendant argues that it made a settlement offer to plaintiff Dixon and that plaintiff's counsel's December 10, 2012 e-mail accepting this offer constituted a valid, binding settlement. (Def.'s Mot. to Enforce Settlement [98].)  Defendant contends that because an attorney's consent to an agreement is binding on his client, plaintiff has no factual or legal basis to oppose enforcement of the settlement. (*Id.*)  Further, defendant seeks reasonable costs and attorney's fees associated with filing the motion. (*Id.*)

The construction of agreements to settle pending lawsuits is typically governed by principles of state contract law. *Hayes v. Nat'l Serv. Indus.*, 196 F.3d 1252, 1254 (11th Cir. 1999)(citing *Blum v. Morgan Guar. Trust Co. of N.Y.*, 709 F.2d 1463 (11th Cir. 1983)). State law also governs the scope of an attorney's authority to settle a suit. *Id.* (citing *Glazer v. J.C. Bradford and Co.*, 616 F.2d 167, 168 (5th Cir. 1980)).  Defendant asserts that Georgia law applies to the present dispute concerning the enforcement of the settlement agreement.  Because Plaintiff does not disagree, the Court will therefore assume that Georgia law applies.

While plaintiff Dixon asserts that he "[has] not agreed to this settlement offer with State Farm or [his] attorneys Green & Sapp,LLP (sic)," (Pl. Dixon's Reply [102]), it is undisputed that plaintiff's

6

attorney sent an e-mail to defendant's attorney confirming the settlement agreement. (*See* Def.'s Mot. to Enforce Settlement at Ex. D [98-4].) Plaintiff does not disagree that his attorney and defense counsel made an agreement. He resists enforcement, however, because he did not agree to this settlement. The question before the Court then is whether plaintiff is bound by his attorney's agreement to settle, even though plaintiff never authorized his attorney to so agree.

The Georgia Supreme Court has held that "[u]nder Georgia law an attorney of record has apparent authority to enter into an agreement on behalf of his client and the agreement is enforceable against the client by other settling parties." *Brumbelow v. N. Propane Gas Co.*, 251 Ga. 674, 674 (1983)(citing *Glazer*, 616 F.2d at 167 & *Stone Mountain Confederate Monumental Ass'n v. Smith*, 170 Ga. 515 (1930)). The attorney's authority to effectuate agreements with opposing parties is "determined by the contract between the attorney and the client and by instructions given the attorney by the client . . . ." *Potomac Leasing Co., Inc. v. First Nat'l Bank of Am.*, 180 Ga. App. 255, 258 (1986)(citing *Davis v. Davis*, 245 Ga. 233 (1980)).

An attorney's authority may be considered "plenary" by opposing parties unless it is "limited by the client and that limitation is communicated to opposing parties." *Omni Builders Risk, Inc. v. Bennett*, 313 Ga. App. 358, 361 (2011)(citing *Rodenbaugh v. Robbins*,

180 Ga. App. 338, 339 (1986)). Yet, "in the absence of knowledge of express restrictions on an attorney's authority, the opposing party may deal with the attorney as if with the client, and *the client will be bound by the acts of his attorney within the scope of his apparent authority*." Brooks v. Ironstone Bank, 314 Ga. App 879, 880 (2012)(emphasis added)(quoting *Brumbelow*, 351 Ga. at 675). *See also Glazer v. J.C. Bradford and Co.*, 616 F.2d 167, 168 (5th Cir. 1980)(stating that a client is "bound by his attorney's agreement to settle a lawsuit, even though the attorney may not have had express authority to settle, if the opposing party was unaware of any limitation on the attorney's apparent authority."); *Ford v. Citizens and S. Nat'l Bank, Cartersville*, 928 F.2d 1118, 1120 (11th Cir. 1991).[5]

The first question before the Court is whether plaintiff's attorneys qualify as "attorneys of record" such that they possessed the authority to make an agreement on behalf of the plaintiff. The answer: they clearly do. Sapp served a Notice of Appearance for plaintiff on May 7, 2012 and Moriarty served his Notice of Appearance on July 30, 2012. (Pl.'s Not. of Appearance [83] & [93].) Counsel

---

[5] A party whose attorney has exceeded his actual authority by is not without a remedy. According to Georgia law, when restrictions on an attorney's authority to effectuate agreements on behalf of his client are not communicated to the opposing party, "[t]he client's remedy . . . is against the attorney who overstepped the bounds of his agency, not against the third party." *Brumbelow*, 251 Ga. at 675.

for defendant was notified electronically of each counsel's representation. (*Id.*) Plaintiff does not disagree that Sapp and Moriarty were his attorneys of record at the time the alleged settlement was reached.

Further, plaintiff does not allege that his contract with Sapp and Moriarty forbade either of them from negotiating on plaintiff's behalf. To the contrary, plaintiff requested specifically that Moriarty bargain with, and assert counteroffers, to defendant on plaintiff's behalf. (Pl.'s Obj. [104] & Pl.'s Resp. in Opp'n [105].) Thus, Sapp and Moriarty had plaintiff's verbal consent to act on his behalf, at the least, to negotiate the settlement.

On the other hand, it is not clear that counsel had plaintiff's authority to <u>finalize</u> a settlement agreement. Indeed, e-mails submitted by plaintiff arguably support an inference that his attorney had only limited authority to settle the suit. First, plaintiff's e-mail to Moriarty on November 16, 2012 indicated that plaintiff was willing to settle for $587,000.00, and it did not authorize Moriarty to agree to less than that amount. (Pl.'s Obj. [104].) Second, plaintiff's implicit rejection of defendant's settlement offer in his November 29, 2012 e-mail also suggests that he had not yet authorized a settlement. That is, when pressed to accept defendant's first offer of $9,978, plaintiff Dixon reemphasized he was willing to settle for his original request of

9

$587,000.00.  (*Id.*)

Third, an e-mail sent on December 5, 2012 from counsel Moriarty to plaintiff Dixon confirmed a prior conversation between the two regarding settlement agreements.  This e-mail suggests that plaintiff had advised his attorney of the minimum amount necessary for him to settle the case, as he stated that counsel was "authorized to accept anything higher than $14,000."  (*Id.*)  From this e-mail, one could reasonably infer that plaintiff had not authorized a settlement below that $14,000 figure.  (*Id.*)  Fourth, plaintiff's e-mail to Moriarty on December 10, just two hours prior to Moriarty's acceptance of defendant's settlement offer, also suggests a limitation on counsel's authority to settle.  In that e-mail, plaintiff stated ". . . the counter offer should consist of **personal property** and **property damages** . . . I strongly feel we can make more realistic than $9,978.00." (Pl.'s Resp. in Opp'n [105].)  Although this last e-mail does not state explicitly that counsel cannot accept Defendant's $9,978 offer, it does suggest, when coupled with the prior e-mails discussed above, that plaintiff intended to limit his attorney's authority to settle for any amount he chose.

Yet, regardless of what limitations plaintiff had placed on his counsel's <u>actual</u> authority to settle, the question here is whether his attorneys had <u>apparent</u> authority to agree to a settlement on behalf of his client.  If they did, defense counsel was permitted to

10

rely on that apparent authority. As noted, Georgia law provides that an attorney is deemed to have "plenary" authority,[6] insofar as opposing parties are concerned, unless any limitation on that authority has been communicated to the opposing party or his counsel. *See Hayes*, 196 F.3d at 1254 ("[t]he client is therefore bound by his attorney's agreement to settle a lawsuit, even though the attorney may not have had express authority to settle, if the opposing party was unaware of any limitation on the attorney's apparent authority.")(internal quotations omitted)(quoting *Ford*, 928 F.2d at 1120); *Pembroke State Bank v. Warnell*, 266 Ga. 819, 821 (1996)("from the perspective of the opposing party, in the absence of knowledge of express restrictions on an attorney's authority, the opposing party may deal with the attorney as if with the client, and the client will be *bound by the acts of his attorney within the scope of his apparent authority*.")(emphasis added)(quoting *Brumbelow*, 251 Ga. at 674-75).

As neither party has provided affidavits setting out exactly who said what when, the undersigned has a very fragile grip on exactly just what happened here in the course of this settlement negotiation. Of course, the Court could try to fill in the missing information by guessing, from the e-mails, what probably happened. But it should

---

[6] The Georgia Court of Appeals has defined "plenary" as "'complete in every respect: absolute, perfect, unqualified.'" *DeKalb Cnty. v. DRS Invs., Inc.*, 260 Ga. App. 225, 226 n.4 (2003) (quoting WEBSTER'S THIRD NEW INT'L DICTIONARY 1739 (1976)).

11

not have to do so, nor is it appropriate for it to do so.

Now, it is true that, under Georgia law, it is plaintiff's burden to show that defense counsel was on notice of any limitation in the authority of plaintiff's counsel to settle.  Yet, plaintiff has provided no affidavit or other evidence satisfying this burden. As a *pro se* litigant, however, plaintiff might have been unaware that he had such a burden or that he needed to produce an affidavit to satisfy this burden.  Indeed, in its short brief seeking enforcement of the settlement agreement, defendant eschewed any "complex legal analysis," "[g]iven the straightforward nature of the dispute." (Def.'s Mot. to Enforce Settlement [98] at 4.)  Citing only to two decisions written by the undersigned, which "outlined the law," defendant left it to the Court to figure out the legal analysis that has earlier been set out in this Order.  (*Id.* at 5.)

Thus, plaintiff would not have been aware from defendant's abbreviated motion that it was his burden to demonstrate that defense counsel was on notice of his attorney's lack of authority to settle the case.  Similarly, he would have been unaware that he was required to produce an affidavit setting out his version of events, as the defendant had likewise submitted no affidavit in support of the version of facts it recounted in its initiating motion.  *See* LR 7.1(A)(1), NDGa ("If allegations of fact are relied upon, supporting affidavits must be attached to the memorandum of law.")

12

Besides the absence of any affidavit from defense counsel indicating their own unawareness of any limitations on the authority of plaintiff's counsel to negotiate a settlement, the record also suggests that defendant may possibly have been on some notice of the unlikelihood that plaintiff would have agreed to this settlement. That is, defense counsel's e-mail to plaintiff's counsel on December 11, 2012 shows that defense counsel was aware that a Tom Bound had filed a lien on the case for $6,210.83. (*See* Def.'s Mot. to Enforce Settlement at Ex. C [98-3].) Further, by making the settlement check out to Green & Sapp, LLC, defense counsel must have known that additional money from the settlement would also have to be paid to plaintiff's current counsel. (Def.'s Reply Br. [103-1].) Adding together the two payments, these two separate attorney's fees would likely have exceeded the settlement figure of $9,978, meaning that plaintiff would wind up owing money to one of his attorneys.

While that may well have been the smart thing for the plaintiff to agree to, given the diminished value of his case and the large amount of attorney's fees he had amassed, defense counsel were aware that plaintiff has been quite contrary throughout the case and has demonstrated a greatly-inflated view of its value. Given the difficulties that everyone has had in dealing with the plaintiff, it obviously would have been prudent for defense and plaintiff's counsel to insure that plaintiff had signed onto the settlement agreement.

13

They did not and, unsurprisingly, we now have this collateral litigation.

In short, it may well be that defendant will ultimately prevail on this motion. Yet, defendant is the movant, and, at this juncture, its sparse briefing has not yet persuaded the court that its motion should be granted. Thus, defendant's motion to enforce the settlement agreement is **DENIED WITHOUT PREJUDICE.**

Plaintiff should not get emboldened by the Court's ruling on this current motion, however, because it may be but a temporary victory. Defendant will have an opportunity to refile its motion and correct the deficiencies in the original motion. At best, even if defendant's second motion to enforce settlement is denied, plaintiff will still have to litigate this case on its merits. Yet, as a result of plaintiff's misconduct, the magistrate judge earlier struck the only claim that had the potential to result in substantial damages for plaintiff. (*See* Order [96] at 14.) This means that plaintiff's potential recovery is quite modest.

Moreover, as defendant has correctly pointed out, plaintiff has consistently engaged in gamesmanship and a breach of his discovery obligations. (*See* Def.'s Mot. to Enforce Settlement [98] at 1.) Thus, it is not unreasonable to expect that plaintiff will garner further sanctions should he continue to litigate this case in the manner he has done so far. (*Id.* at 15.) As it would be prudent for

14

plaintiff to attempt to settle this matter <u>now</u> with the defendant before engaging in sanctionable conduct that may ultimately result in his owing money to defense counsel, in addition to the fees he already owes to his own previous attorneys, the Court directs that this case be referred to a magistrate judge to conduct a settlement conference between plaintiff and the defendant. Plaintiff is warned that should he fail to appear at this settlement conference, his case will be subject to dismissal for failure to obey the Order of the Court.

If the case is not settled, defendant will be permitted to refile a motion to enforce settlement, correcting the defects in its initial motion.

## **CONCLUSION**

For the above reasons, the Court **DENIES WITHOUT PREJUDICE** defendant's Motion to Enforce Settlement [98]. This case is referred to a magistrate judge to conduct a settlement conference between plaintiff and the defendant.

SO ORDERED, this <u>3rd</u> day of September, 2013.

/s/ Julie E. Carnes
JULIE E. CARNES
CHIEF UNITED STATES DISTRICT JUDGE

15

AO 72A
(Rev.8/82)